**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**FORT SMITH DIVISION**

MONICA LEIGH BURKHARDT, JOHN COULTER, JAMILLETTE GAXIOLA, JESSICA HINTON a/k/a JESSA HINTON, BROOKE JOHNSON a/k/a BROOKE TAYLOR, CARRIE MINTER, EVA PEPAJ, KATARINA VAN DERHAM, and IRINA VORONINA,

Plaintiffs,

v.

RED ROPER CLUB, LTD d/b/a ELECTRIC COWBOY OF FORT SMITH; ELECTRIC COWBOY OF FAYETTEVILLE, INC. d/b/a WHISKEY 101; ELECTRIC COWBOY OF LITTLE ROCK, INC. d/b/a ELECTRIC COWBOY LITTLE ROCK; MLT MANAGEMENT, INC.; and MLT MANAGEMENT, LLC,

Defendants.

Case No. 2:26-cv-02181-DCF

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiffs MONICA LEIGH BURKHARDT, JOHN COULTER, JAMILLETTE GAXIOLA, JESSICA HINTON a/k/a JESSA HINTON, BROOKE JOHNSON a/k/a BROOKE TAYLOR, CARRIE MINTER, EVA PEPAJ, KATARINA VAN DERHAM, and IRINA VORONINA (collectively, "Plaintiffs"), by and through undersigned counsel, file this Complaint against RED ROPER CLUB, LTD d/b/a ELECTRIC COWBOY OF FORT SMITH; ELECTRIC COWBOY OF FAYETTEVILLE, INC. d/b/a WHISKEY 101; ELECTRIC COWBOY OF LITTLE ROCK, INC. d/b/a ELECTRIC COWBOY LITTLE ROCK; MLT MANAGEMENT, INC.; and MLT MANAGEMENT, LLC (collectively, "Defendants"), and allege as follows:

## BACKGROUND

1. This action arises from a coordinated and recurring marketing program used to promote three Arkansas nightclubs operating within the same Electric Cowboy chain: Electric

Cowboy of Fort Smith, Whiskey 101 in Fayetteville, and Electric Cowboy Little Rock. Defendants used Plaintiffs' commercially valuable names, images, likenesses, identities, and apparent endorsements (collectively, the "Images") in social-media advertisements without Plaintiffs' authorization or compensation.

2. Defendant RED ROPER CLUB, LTD d/b/a ELECTRIC COWBOY OF FORT SMITH. operated and promoted the Electric Cowboy nightclub located at 6107 South 31st Street, Fort Smith, Arkansas 72908 ("Fort Smith").

3. Defendant ELECTRIC COWBOY OF FAYETTEVILLE, INC. d/b/a WHISKEY 101 operated and promoted the Whiskey 101 nightclub located at 2127 M.L.K. Jr. Boulevard, Fayetteville, Arkansas 72701 ("Whiskey 101").

4. Defendant ELECTRIC COWBOY OF LITTLE ROCK, INC. d/b/a ELECTRIC COWBOY LITTLE ROCK operated and promoted the Electric Cowboy nightclub located at 9515 I-30, Little Rock, Arkansas 72209 ("Little Rock"). Fort Smith, Whiskey 101, and Little Rock are referred to collectively as the "Nightclubs," and the three operating entities are referred to collectively as the "Electric Cowboy Defendants."

5. Upon information and belief, Defendants MLT MANAGEMENT, INC. ("MLT Inc.") and MLT MANAGEMENT, LLC ("MLT LLC") (collectively, the "MLT Defendants") participated in the management and marketing of the Nightclubs through shared owners, officers, directors, managers, marketing personnel, vendors, policies, practices, and digital-marketing resources. The MLT Defendants and the Electric Cowboy Defendants used a common Electric Cowboy brand and a common marketing system to select, prepare, distribute, and publish nightclub advertisements through Facebook, Instagram, and related channels.

6. The challenged uses were not unrelated acts that merely happened to involve similar businesses. They were part of the same series of transactions and occurrences: a chain-wide practice of acquiring professional-model imagery, incorporating that imagery into standardized promotional advertisements, and publishing those advertisements through commonly managed nightclub social-media accounts to attract patrons.

7. The common series is confirmed by, among other things, overlapping Plaintiffs, the use of the same model collage and the same or materially identical "$1,000 Couples Contest" creative by Fort Smith and Whiskey 101 during the same 2016–2017 campaign period, common Electric Cowboy branding, common management connections, and the recurring use of the same marketing method at Little Rock.

8. As detailed below, Defendants' unauthorized uses give rise to claims for: (a) false association under § 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A); (b) false advertising under § 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B); and (c) for VAN DERHAM only, unauthorized commercial use of her photograph and likeness under California Civil Code § 3344 against the MLT Defendants and Little Rock.

9. Plaintiffs seek all monetary relief available under 15 U.S.C. § 1117(a), including actual damages; the fair market value of the commercial licensing and endorsement rights appropriated by Defendants, alternatively measured by a reasonable license fee or reasonable royalty for the scope and duration of the challenged uses; Defendants' profits attributable to the violations; any adjustment or enhancement the Court finds just and compensatory; costs; attorneys' fees upon a showing that this is an exceptional case; prejudgment and post-judgment interest; and all other relief the Court deems just and proper. VAN DERHAM also seeks the statutory and actual damages, attributable profits, injunctive relief, reasonable attorneys' fees, costs, and other relief available under California Civil Code § 3344, without double recovery.

## JURISDICTION, VENUE, AND JOINDER

10. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because Plaintiffs assert claims under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). The Court has supplemental jurisdiction over VAN DERHAM's California Civil Code § 3344 claim under 28 U.S.C. § 1367 because that claim forms part of the same case or controversy as the federal claims.

11. The Electric Cowboy Defendants are Arkansas entities that operated Arkansas Nightclubs and used Arkansas-directed advertising to attract patrons to those establishments. Each is subject to personal jurisdiction in Arkansas.

12. Upon information and belief, each MLT Defendant, directly or through shared decision makers and affiliated operating entities, purposefully directed continuing management, marketing, and promotional activities into Arkansas; participated in managing the Arkansas Nightclubs and the challenged Arkansas advertising system; and derived commercial benefit from the Nightclubs' Arkansas operations. Each MLT Defendant is therefore subject to specific personal jurisdiction in Arkansas with respect to these claims.

13. Venue is proper in the Western District of Arkansas under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to the claims occurred in Fort Smith and Fayetteville, Arkansas. Two of the three Nightclubs promoted through the challenged common marketing system are located in this District, and a substantial portion of the challenged advertisements promoted those Western District establishments.

14. Assignment to the Fort Smith Division is appropriate because Fort Smith is located in Sebastian County, a substantial part of the challenged conduct occurred there, and RED ROPER CLUB, LTD operated one of the principal Nightclubs involved in the common series from that Division.

15. Joinder is proper under Federal Rule of Civil Procedure 20(a) because Plaintiffs' claims arise from Defendants' commonly managed and standardized nightclub-marketing practice and present common questions of law and fact. The Eighth Circuit permits reasonably related claims to proceed together and does not require absolute identity of events. *Mosley v. General Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir. 1974).

16. The common questions include who selected and supplied the Images; who created, distributed, and published the advertisements; who administered the Nightclubs' social-media accounts; the scope of the MLT Defendants' management and marketing control; Defendants' common policies and licensing practices; the likelihood of consumer confusion; the commercial value of the appropriated endorsement and licensing rights; Defendants' revenues and profits attributable to the advertising; and the allocation of responsibility among Defendants.

17. The precise allocation of management and marketing duties, account access, decision-making authority, and financial benefit between MLT Inc., MLT LLC, and the Electric Cowboy Defendants is information principally within Defendants' possession. Plaintiffs therefore plead that MLT Inc., MLT LLC, or both participated in the common marketing system and challenged uses, and plead their respective participation in the alternative under Federal Rule of Civil Procedure 8(d)(2)–(3).

18. Plaintiffs do not allege that every Electric Cowboy Defendant published every Plaintiff's Image. Each Plaintiff asserts claims against the MLT Defendants and only the applicable Electric Cowboy Defendants identified below. The defendant-specific publications form part of the same commonly managed series while remaining separately attributable to the responsible operating entity.

## PARTIES

***Plaintiffs***

19. Plaintiff MONICA LEIGH BURKHARDT ("BURKHARDT") is a professional model and actress and a resident of Suffolk County, New York.

20. Plaintiff JOHN COULTER ("COULTER") is a professional model and performer and a resident of Los Angeles County, California.

21. Plaintiff JAMILLETTE GAXIOLA ("GAXIOLA") is a professional model and sports personality and a resident of Clark County, Nevada.

22. Plaintiff JESSICA HINTON a/k/a JESSA HINTON ("HINTON") is a professional model, actress, and television personality and a resident of Los Angeles County, California.

23. Plaintiff BROOKE JOHNSON a/k/a BROOKE TAYLOR ("TAYLOR") is a professional model and a resident of Santa Barbara County, California.

24. Plaintiff CARRIE MINTER ("MINTER") is a professional model and actress and a resident of Los Angeles County, California.

25. Plaintiff EVA PEPAJ ("PEPAJ") is a professional model, actress, and content creator and a resident of Los Angeles County, California.

26. Plaintiff KATARINA VAN DERHAM ("VAN DERHAM") is a professional model, actress, entrepreneur, and publisher and a resident of Los Angeles County, California.

27. Plaintiff IRINA VORONINA ("VORONINA") is a professional model, actress, and entertainer and a resident of Los Angeles County, California.

***Defendants***

28. Defendant RED ROPER CLUB, LTD d/b/a ELECTRIC COWBOY OF FORT SMITH. is an Arkansas corporation authorized to conduct business in Arkansas. During the relevant period, it operated and promoted Fort Smith.

29. Defendant ELECTRIC COWBOY OF FAYETTEVILLE, INC. d/b/a WHISKEY 101 is an Arkansas corporation authorized to conduct business in Arkansas. During the relevant period, it operated and promoted Whiskey 101.

30. Defendant ELECTRIC COWBOY OF LITTLE ROCK, INC. d/b/a ELECTRIC COWBOY LITTLE ROCK is an Arkansas corporation authorized to conduct business in Arkansas. During the relevant period, it operated and promoted Little Rock.

31. Defendant MLT MANAGEMENT, INC. is a Texas corporation registered to transact business in Arkansas. Its Arkansas corporate filings identify Fred G. Ginsberg as Secretary and Marshall L. Till as President. Ginsberg and Till also serve as directors of multiple Electric Cowboy operating entities and possess knowledge concerning their management and operations.

32. Defendant MLT MANAGEMENT, LLC is a Texas limited liability company with a principal place of business reported at 3311 Green Oak Place, Tyler, Texas 75701. Upon information and belief, MLT LLC is associated with the management, branding, marketing, and advertising of Electric Cowboy locations, including the Nightclubs.

## FACTUAL ALLEGATIONS

***Common Management and Common Marketing***

33. Each Plaintiff earns income through modeling, endorsements, promotional work, and licensing her or his name, image, likeness, identity, and endorsement for commercial use in advertising products, services, brands, and businesses.

34. Plaintiffs' careers place substantial commercial value on their goodwill, professional reputations, and ability to control the businesses and brands with which they are associated. That control affects their earning potential, ability to book engagements, and the value of future licenses. Plaintiffs therefore are selective about commercial associations and negotiate the price and terms of authorized uses.

35. The Nightclubs operated as parts of the same Electric Cowboy business network. They used common branding, common naming conventions, overlapping owners and managers, a common website and promotional infrastructure, and similar social-media channels to attract patrons.

36. Upon information and belief, one or both MLT Defendants provided or supervised management services for the Nightclubs, including marketing direction, access to shared promotional resources, administration or oversight of social-media accounts, and coordination or dissemination of advertising content.

37. Upon information and belief, one or both MLT Defendants and the Electric Cowboy Defendants maintained a common practice of obtaining professional-model imagery without negotiating licenses with the depicted models, incorporating the imagery into advertisements for nightclub events and promotions, and publishing the advertisements through commonly managed social-media accounts.

38. Fort Smith and Whiskey 101 used overlapping Plaintiffs and the same or materially identical composite imagery and campaign creative during the same campaign period. Those uses provide direct evidence that the challenged advertisements arose from shared source materials or coordinated marketing practices rather than three wholly independent advertising systems.

39. Little Rock later used the same standardized marketing method through the same Electric Cowboy network: professional-model imagery was combined with nightclub branding and event promotions and published through the location's Facebook and Instagram accounts without negotiating or paying for the depicted models' commercial endorsement and licensing rights.

40. Upon information and belief, one or both MLT Defendants, acting directly and through shared decision makers, personnel, and affiliated operating entities, participated in, coordinated, administered, or exercised control over the common Electric Cowboy branding, marketing, advertising, and social-media program and the challenged uses. The identities and exact roles of the participants, the account-administration records, and the flow of creative assets are within Defendants' possession and control.

41. The Electric Cowboy Defendants operated or controlled the social-media accounts used to promote their respective Nightclubs. The MLT Defendants and the Electric Cowboy Defendants used those accounts and the challenged advertisements for their own commercial and financial benefit, including attracting patrons and promoting events, services, and alcohol sales.

42. Defendants used and altered Plaintiffs' Images in advertising in a manner that falsely conveyed that Plaintiffs worked at, endorsed, approved, sponsored, or were otherwise associated or affiliated with the Nightclubs and their events.

43. Those apparent associations were false. No Plaintiff worked at a Nightclub, endorsed a Nightclub or Defendant, authorized the challenged advertising, or agreed to appear at the advertised events.

44. Defendants did not negotiate with, obtain a commercial license from, or pay any Plaintiff for the challenged uses or for the endorsement, sponsorship, approval, or affiliation conveyed by the advertisements.

45. By using Plaintiffs' identities commercially without negotiating or paying for the associated rights, Defendants appropriated commercial value that ordinarily is licensed, interfered with Plaintiffs' licensing and endorsement opportunities, and caused commercial injury to Plaintiffs' reputations, goodwill, and professional brands.

***Plaintiff and Exhibit Map***

46. BURKHARDT has modeled for national publications and has appeared in commercial entertainment and promotional media. As shown in Exhibit "A", Fort Smith used

BURKHARDT's Image in advertising published through its Facebook account. Exhibit A is organized as: A-1, Fort Smith advertisements, ordered chronologically.

47. COULTER has modeled for national fashion, apparel, cosmetic, and entertainment campaigns and has appeared in major commercial productions. As shown in Exhibit "B", Fort Smith and Whiskey 101 used COULTER's Images in advertising. Exhibit B is organized as: B-1, Fort Smith Facebook advertisements; and B-2, Whiskey 101 Facebook advertisements. Advertisements within each location subpart are ordered chronologically.

48. GAXIOLA has modeled for national and international fashion brands and has worked as a sports personality. As shown in Exhibit "C", Little Rock used GAXIOLA's Images in advertising published through its Facebook and Instagram accounts. Exhibit C is organized as: C-1, Little Rock advertisements, ordered chronologically.

49. HINTON has worked in national advertising, print modeling, television, and commercial spokesperson roles. As shown in Exhibit "D", Whiskey 101 used HINTON's Image in advertising published through its Facebook account. Exhibit D is organized as: D-1, Whiskey 101 advertisements, ordered chronologically.

50. TAYLOR has appeared in national magazines, commercial campaigns, catalogs, and television advertising. As shown in Exhibit "E", Fort Smith used TAYLOR's Image in advertising published through its Facebook account. Exhibit E is organized as: E-1, Fort Smith advertisements, ordered chronologically.

51. MINTER has modeled for major designers and has appeared in national magazines, advertising campaigns, film, television, and commercial media. As shown in Exhibit "F", Fort Smith and Whiskey 101 used MINTER's Images in advertising. Exhibit F is organized as: F-1, Fort Smith Facebook advertisements; and F-2, Whiskey 101 Facebook and Instagram advertisements. Advertisements within each location subpart are ordered chronologically.

52. PEPAJ has worked in high-fashion, print, film, national television advertising, and digital content creation. As shown in Exhibit "G", Little Rock used PEPAJ's Images in advertising

published through its Facebook account. Exhibit G is organized as: G-1, Little Rock advertisements, ordered chronologically.

53. VAN DERHAM has appeared in national and international modeling and advertising campaigns, has served as a commercial spokesperson, and founded a glamour and lifestyle publication. As shown in Exhibit "H", Little Rock used VAN DERHAM's Images in advertising published through its Facebook and Instagram accounts on December 18, 2025. The challenged uses allegedly appropriated and injured the commercial value of VAN DERHAM's identity, reputation, goodwill, and licensing and endorsement rights. Exhibit H is organized as: H-1, Little Rock advertisements, ordered chronologically.

54. VORONINA has represented national and international consumer brands and has appeared extensively in print, television, film, promotional, and digital media. As shown in Exhibit "I", Fort Smith and Whiskey 101 used VORONINA's Images in advertising. Exhibit I is organized as: I-1, Fort Smith Facebook advertisements; and I-2, Whiskey 101 Facebook and Instagram advertisements. Advertisements within each location subpart are ordered chronologically.

55. The exhibit organization assigns one exhibit letter to each unique Plaintiff and uses location subparts only when the same Plaintiff appeared in advertisements for more than one Nightclub. This avoids duplicating evidence while identifying each responsible Electric Cowboy Defendant and social-media account.

***Standard Business Practices in the Modeling Industry***

56. Hiring a professional model or commercially using a professional model's identity, likeness, or endorsement ordinarily requires negotiation of both the services to be performed and the scope and terms of the resulting commercial usage rights.

57. The compensation and license fee for a professional model ordinarily depend on, among other things: (a) the model's reputation, earning capacity, experience, public recognition, and demand; (b) the identity and nature of the advertised business and the association or endorsement conveyed; (c) the media and manner of use, including social media and event advertising; (d) the audience, reach, geographic territory, frequency, and prominence of the use;

(e) the duration or term of the use; and (f) any exclusivity or other restrictions imposed on the model's ability to work with other businesses.

58. Industry compensation may include both a fee for a model's services and a separate usage, license, or endorsement fee for the right to exploit the model's identity commercially. The usage fee compensates for the authorized scope, duration, audience, and commercial association created by the advertisement, regardless of whether a new photo shoot is required.

***Commercial Injury and Damages***

59. Defendants' unauthorized commercial use of Plaintiffs' Images falsely conveyed that Plaintiffs worked at, endorsed, approved, sponsored, or were otherwise associated with the Nightclubs.

60. Defendants' uses substituted uncompensated and uncontrolled commercial associations for the licensed modeling and endorsement opportunities from which Plaintiffs earn income. Those uses interfered with present and future licensing opportunities and diminished the commercial value of Plaintiffs' identities, professional brands, and goodwill.

61. The false attribution of nightclub associations also injured Plaintiffs' commercial reputations and goodwill by linking their professional identities to businesses they did not select, approve, sponsor, or endorse and may require reasonable corrective efforts to address resulting marketplace confusion and commercial harm.

62. Had Defendants sought the right to use Plaintiffs' identities in the challenged advertising, the scope, duration, audience, geographic reach, media, and commercial association of each proposed use would have been subject to negotiation and payment of a commercially reasonable license or endorsement fee.

63. The fair market value of the commercial rights Defendants appropriated can be determined from Plaintiffs' licensing and endorsement histories, comparable transactions, the nature and extent of Defendants' actual uses, customary industry factors, and expert testimony. That value may be measured, as permitted by the evidence and applicable law, by a reasonable license fee or reasonable royalty for each Plaintiff and each challenged use.

64. As a direct and proximate result, Plaintiffs suffered actual commercial damages, including lost or impaired licensing and endorsement income and opportunities; injury to professional reputation and goodwill; diminution in the commercial value of their identities; the fair market value of the licensing and endorsement rights appropriated by Defendants, alternatively measured by a reasonable license fee or reasonable royalty; and reasonable corrective-advertising or remediation expenses shown to be necessary, all in amounts to be established through discovery and proof at trial.

**FIRST CAUSE OF ACTION**
**(Violation of § 43 of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A) — False Association)**

65. Plaintiffs re-allege each allegation set forth above and incorporate those allegations by reference as though fully set forth herein.

66. Section 43 of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), applies to Defendants and protects Plaintiffs from the conduct described herein.

67. Each Plaintiff asserts this claim against the MLT Defendants and the applicable Electric Cowboy Defendants identified in the Plaintiff and Exhibit Map.

68. Defendants used Plaintiffs' Images in advertising in a manner likely to convey to the public that Plaintiffs worked at, endorsed, sponsored, approved, or were associated with the Nightclubs and their events.

69. Defendants used the advertisements in interstate commerce to promote the Nightclubs, events, and services and to attract patrons.

70. Plaintiffs commercially license their names, Images, likenesses, identities, and endorsements to brands and businesses. Through their professional work and public recognition, each Plaintiff's identity has acquired commercial value and serves to identify that Plaintiff as the source of her or his professional modeling and endorsement services.

71. Defendants' uncompensated commercial use of Plaintiffs' identities substituted for licensed modeling and endorsement rights, appropriated the economic value of those rights,

interfered with Plaintiffs' legitimate licensing and endorsement opportunities, and threatened the value of Plaintiffs' professional brands, reputations, and goodwill.

72. Defendants' unauthorized uses were likely to cause consumers to believe that Plaintiffs sponsored, approved, worked at, appeared at, or were associated with the Nightclubs, causing competitive injury to Plaintiffs' commercial interests in their identities and professional brands.

73. Each MLT Defendant is directly liable because, upon information and belief, it participated in, coordinated, administered, or exercised control over the common advertising system and challenged uses. Plaintiffs plead the MLT Defendants' respective participation in the alternative and seek to hold each only for its own conduct and conduct legally attributable to it. Each Electric Cowboy Defendant is liable for advertisements promoting its Nightclub.

74. As a direct and proximate result, Plaintiffs lost control over the businesses and services with which their identities appeared to be associated, the commercial terms and value of those associations, the nature of the advertisements depicting them, and the manner in which their names, Images, likenesses, identities, and endorsements were presented to consumers.

75. By falsely attributing affiliations to Plaintiffs and appropriating commercially valuable licensing and endorsement rights without compensation, Defendants injured Plaintiffs' professional reputations and goodwill, impaired licensing and endorsement opportunities, and diminished the commercial value of Plaintiffs' identities and professional brands.

76. As a direct and proximate result of Defendants' violations, Plaintiffs are entitled to recover their actual damages under 15 U.S.C. § 1117(a), including proven lost or impaired licensing and endorsement income and opportunities; commercial injury to reputation and goodwill; diminution in the commercial value of their identities; reasonable corrective-advertising or remediation expenses; and the fair market value of the licensing and endorsement rights appropriated by Defendants, alternatively measured by a reasonable license fee or reasonable royalty for the scope and duration of each challenged use.

77. Plaintiffs also seek an accounting and Defendants' profits attributable to the violations, separately and in addition to or as an alternative to Plaintiffs' damages to the extent permitted without double recovery; any adjustment or enhancement the Court finds just and compensatory under 15 U.S.C. § 1117(a); costs; attorneys' fees upon a showing that this is an exceptional case; prejudgment and post-judgment interest; and such other relief as the Court deems just and proper.

**SECOND CAUSE OF ACTION**
**(Violation of § 43 of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B) — False Advertising)**

78. Plaintiffs re-allege each allegation set forth above and incorporate those allegations by reference as though fully set forth herein.

79. Section 43 of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), prohibits the use in commercial advertising or promotion of a false or misleading representation of fact that misrepresents the nature, characteristics, qualities, or geographic origin of a person's goods, services, or commercial activities.

80. Each Plaintiff asserts this claim against the MLT Defendants and the applicable Electric Cowboy Defendants identified in the Plaintiff and Exhibit Map.

81. Defendants used Plaintiffs' Images, likenesses, and identities without authority in advertisements that conveyed that Plaintiffs worked at or were affiliated with the Nightclubs, endorsed the Nightclubs or their events, consented to Defendants' use of their Images, or would participate in or appear at the promoted events.

82. Those representations were false and misleading. No Plaintiff worked at, endorsed, sponsored, approved, or was affiliated with a Nightclub; consented to the challenged use; or agreed to appear at the promoted event.

83. The challenged representations were made in commercial advertising or promotion because the advertisements promoted the Nightclubs, their events, and their services to actual and prospective patrons through social media.

84. The false or misleading representations were material to Defendants' effort to attract patrons by associating the Nightclubs and their events with recognized professional models and apparent endorsements or appearances.

85. The advertisements entered interstate commerce through Facebook, Instagram, and the Nightclubs' digital marketing channels.

86. Defendants' false advertising proximately harmed Plaintiffs' commercial interests in their professional reputations, goodwill, licensing and endorsement opportunities, and the commercial value of their identities by falsely attributing to Plaintiffs affiliations with and endorsements of the Nightclubs.

87. Each MLT Defendant is directly liable because, upon information and belief, it participated in, coordinated, administered, or exercised control over the common advertising system and challenged uses. Plaintiffs plead the MLT Defendants' respective participation in the alternative and seek to hold each only for its own conduct and conduct legally attributable to it. Each Electric Cowboy Defendant is liable for advertisements promoting its Nightclub.

88. As a direct and proximate result of Defendants' false advertising, Plaintiffs suffered actual commercial damages in an amount to be determined at trial, including proven lost or impaired licensing and endorsement income and opportunities; commercial injury to reputation and goodwill; diminution in the commercial value of their identities; reasonable corrective-advertising or remediation expenses; and the fair market value of the licensing and endorsement rights appropriated by Defendants, alternatively measured by a reasonable license fee or reasonable royalty for the scope and duration of each challenged use.

## THIRD CAUSE OF ACTION
## (Violation of California Civil Code § 3344 — Unauthorized Commercial Use of Photograph and Likeness — As to Plaintiff Van Derham Only)

89. VAN DERHAM re-alleges paragraphs 1 through 64 and incorporates those allegations by reference as though fully set forth herein.

90. This claim is asserted only by VAN DERHAM against the MLT Defendants and ELECTRIC COWBOY OF LITTLE ROCK, INC. d/b/a ELECTRIC COWBOY LITTLE ROCK (collectively for this claim, the "Little Rock Defendants").

91. California Civil Code § 3344 protects VAN DERHAM's commercial interest in her name, photograph, and likeness from unauthorized use for advertising or selling products, merchandise, goods, or services.

92. California law governs this claim because VAN DERHAM is a California resident, she sustained injury in California to the commercial value of her identity and licensing and endorsement rights, and California has a substantial interest in protecting those interests from uncompensated commercial exploitation.

93. Upon information and belief, on December 18, 2025, the Little Rock Defendants knowingly selected, incorporated, and used VAN DERHAM's photograph and likeness in Facebook and Instagram advertisements promoting Little Rock, its events, and its services, as shown in Exhibit H.

94. The challenged uses were directly connected to the Little Rock Defendants' commercial purpose of advertising and soliciting purchases of nightclub admissions, services, beverages, and event-related offerings.

95. VAN DERHAM did not consent in writing or otherwise to any challenged use and did not authorize the association, endorsement, or advertising conveyed by those uses.

96. For this claim, VAN DERHAM alleges that the Little Rock Defendants knowingly used advertising materials containing her photograph and likeness. She does not allege that they intended to violate § 3344 or intended to cause her injury.

97. As a direct and proximate result, VAN DERHAM suffered actual damages, including the reasonable fair-market license fee or royalty that would have been paid for comparable authorized uses; lost or impaired licensing and endorsement income and opportunities; diminution in the commercial value of her identity; and other actual damages to be proved.

98. VAN DERHAM seeks the greater of $750 or her actual damages, the Little Rock Defendants' profits attributable to the unauthorized uses and not included in computing actual damages, injunctive relief, reasonable attorneys' fees and costs, interest, and all other relief available under California Civil Code § 3344, without double recovery.

**DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury on all issues so triable.

**PRAYER FOR RELIEF**

Plaintiffs respectfully request judgment in their favor and against the applicable Defendants as follows:

(a) For Plaintiffs' actual damages under 15 U.S.C. § 1117(a), including proven lost or impaired licensing and endorsement income and opportunities; commercial injury to reputation and goodwill; diminution in the commercial value of Plaintiffs' identities; reasonable corrective-advertising or remediation expenses; and the fair market value of the licensing and endorsement rights appropriated by Defendants, alternatively measured by a reasonable license fee or reasonable royalty for the scope and duration of each challenged use;

(b) For an accounting and Defendants' profits attributable to the violations under 15 U.S.C. § 1117(a), separately and in addition to or as an alternative to Plaintiffs' damages to the extent permitted without double recovery;

(c) For costs and, upon a showing that this is an exceptional case, reasonable attorneys' fees under 15 U.S.C. § 1117(a);

(d) For prejudgment and post-judgment interest as permitted by law;

(e) For any adjustment or enhancement of damages or profits that the Court finds just and compensatory under 15 U.S.C. § 1117(a); and

(f) For VAN DERHAM's relief under California Civil Code § 3344 against the MLT Defendants and Little Rock, including the greater of $750 or her actual damages, attributable profits not included in computing actual damages, injunctive relief, reasonable attorneys' fees and

costs, prejudgment and post-judgment interest, and all other relief available under that statute, without double recovery; and

(g) For such other and further relief as the Court deems just and proper.

Dated: November 16, 2026.

/s/ *Joseph N. Casas*
Joseph N. Casas
Illinois Bar No. 6274674
California Bar No. 225800
Admitted W.D. Arkansas
TALENT RIGHTS LAW | THE CASAS LAW FIRM, PC
11844 Bandera Rd #509
Helotes, Texas 78023
P: 855-267-4457
joseph@talentrights.law
Attorney for Plaintiffs